UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------X
                                                            :
PAUL MARTINKA,                                              :
                                                            :
                              Plaintiff,                    :
                                                            :
                                                            :        24-cv-03601 (LJL)
              -v-                                           :
                                                            :       OPINION AND ORDER
HAGEDORN COMMUNICATIONS, INC.,                              :
                                                            :
                              Defendant.                    :
                                                            :
---------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: _9/15/2025__

LEWIS J. LIMAN, United States District Judge:

Plaintiff Paul Martinka ("Plaintiff") brings this action against Defendant Hagedorn Communications, Inc. ("Defendant"), alleging direct copyright infringement. *See* Dkt. No. 1 ("Complaint" or "Compl."). Defendant has not filed an answer or taken any other action to respond to the Complaint. Plaintiff moves for default judgment pursuant to Federal Rule of Civil Procedure 55(b) and for a permanent injunction pursuant to Federal Rule of Civil Procedure 65. *See* Dkt. No. 20 ("Pl. Br.").

For the following reasons, the motion is granted in part and denied in part.

## BACKGROUND

The following facts are drawn from the Complaint and are assumed to be true for purposes of this motion.

Plaintiff is a professional photographer who claims to be the legal and rightful owner of certain photographs which he licenses to online and print publications. Compl. ¶ 10. Plaintiff's photographs are original, creative works. *Id.* ¶ 13. Plaintiff is a citizen of the State of New York and resides in Kings County, New York. *Id.* ¶ 5.

Defendant is a media company which owns and operates a website at domain www.rew-online.com (the "Website"). *Id.* ¶ 3. Defendant is a New York corporation and maintains a principal place of business in New Rochelle, New York. *Id.* ¶ 6. Defendant's Website is monetized in that it promotes Defendant's business to the public and Defendant profits from those activities. *Id.* ¶ 22. Defendant takes an active role in the content posted on its Website, including, but not limited to copying, posting, selecting, commenting on, and/or displaying images. *Id.* ¶ 30. Defendant directly contributes to the content posted on the Website by, *inter alia*, directly employing reporters, authors, and editors as its agents. *Id.* ¶ 31.

On December 13, 2019, Plaintiff first published a photograph of former New York City Mayor Bill de Blasio (the "Photograph"). *Id.* ¶ 14; Dkt. No. 1-1. The Photograph depicts de Blasio in front of a microphone with a pensive, inquisitive look against a backdrop of New York City apartments. Dkt. No. 1-1. Plaintiff personally selected the subject matter, timing, lighting, angle, perspective, depth, lens, and camera equipment used to capture the image. Compl. ¶ 15. Plaintiff created the Photograph with the intention of it being used commercially and for the purpose of display and/or public distribution. *Id.* ¶ 17. On January 11, 2020, the Photograph was registered by the United States Copyright Office ("USCO") under Registration No. VA 2-187-131. *Id.* ¶ 14; Dkt. No. 18-2. Plaintiff published the Photograph by commercially licensing it to the New York Post for the purpose of display and/or public distribution. Compl. ¶ 18.

On or about March 10, 2020, Defendant displayed the Photograph on the Website as part of an online story (the "Infringement"). *Id.* ¶ 23; Dkt. No. 1-2. The Photograph was stored locally on Defendant's server. Compl. ¶ 24. The Infringement includes a Uniform Resource Locator ("URL") that was sufficiently permanent or stable to permit it to be communicated for a period of more than a transitory duration. *Id.* ¶ 28. Defendant did not obtain a license or other

permission from Plaintiff to feature the Photograph on its Website.  *Id.* ¶ 27.  The Infringement is an exact copy of Plaintiff's original image that was displayed by Defendant on the Website.  *Id.* ¶ 29; Dkt. No. 1-2.

Plaintiff first observed the Photograph on the Website on April 11, 2022.  *Id.* ¶ 26.  On March 10, 2023, Plaintiff, through counsel, served a letter seeking to address Plaintiff's complaints regarding Defendant's Infringement.  *Id.* ¶ 45.  Defendant failed to respond and, despite Plaintiff's notification to Defendant, Defendant has continued to infringe Plaintiff's work.  *Id.* ¶¶ 46–47.

## PROCEDURAL HISTORY

Plaintiff commenced this action by complaint filed on May 5, 2024.  *See* Dkt. No. 1.  The Clerk of Court issued an electronic summons on May 13, 2024, Dkt. No. 5, and, on May 20, 2024, Plaintiff filed an Affidavit of Service reflecting that, on May 17, 2024, he had effected service on Defendant by serving the Summons and Complaint on Defendant through the Office of the Secretary of State for the State of New York, *see* Dkt. No. 7; Dkt. No. 19 ¶ 6.  Defendant has failed to answer or otherwise appear.

On July 11, 2024, Plaintiff filed a request with the Clerk of the Court for the entry of a Certificate of Default, averring that service had been effected on Defendant and that the time for Defendant to answer or otherwise move against the Complaint had expired.  Dkt. No. 10; Dkt. No. 19 ¶ 9.  Plaintiff served a copy of the request to enter default on Defendant at its principal place of business.  Dkt. No. 11; *see* Compl. ¶ 6 (Defendant's principal place of business).  The Clerk of Court issued a certificate of default against Defendant that same day.  Dkt. No. 12.  On August 6, 2024, the Court filed notice of an initial pretrial conference scheduled for August 30, 2024.  Dkt. No. 13.  On August 7, 2024, Plaintiff served Defendant with notice of the initial pretrial conference at Defendant's principal place of business.  Dkt. No. 14.  On August 28,

2024, Plaintiff moved for an adjournment of the August 30, 2024, initial pretrial conference noting that Defendant had failed to appear and had failed to answer or otherwise respond to the Complaint.  Dkt. No. 15.  The Court adjourned the initial pretrial conference *sine die*.  Dkt. No. 16.

On October 1, 2024, Plaintiff filed this motion for a default judgment.  Dkt. No. 17.  In support of the motion for default judgment, Plaintiff filed a declaration of the Plaintiff and of counsel and a memorandum of law.  *See* Dkt. Nos. 18–20.  Plaintiff also filed a statement of damages seeking to recover $3,650.00 in statutory damages for direct copyright infringement, $2,280.00 in attorneys' fees, and $460.00 in costs for a total judgment of $6,390.00.  Dkt. No. 21 at 12.  Plaintiff served the motion for a default judgment on Defendant at Defendant's principal place of business.  *See* Dkt. No. 22.  Defendant has not responded to the motion.

## LEGAL STANDARD

Federal Rules of Civil Procedure 55 sets forth a two-step procedure to be followed for the entry of judgment against a party who fails to defend: the entry of a default, and the entry of a default judgment.  *See New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005).

The first step, entry of a default, simply "formalizes a judicial recognition that a defendant has, through its failure to defend the action, admitted liability to the plaintiff."  *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011); *see* Fed. R. Civ. P. 55(a).  The second step, entry of a default judgment, "converts the defendant's admission of liability into a final judgment that terminates the litigation and awards the plaintiff any relief to which the court decides it is entitled, to the extent permitted" by the pleadings.  *Mickalis Pawn Shop*, 645 F.3d at 128; *see also* Fed. R. Civ. P. 55(b).  Whether entry of default judgment at the second step is appropriate depends upon whether the well-pleaded allegations against the defaulting party establish liability as a matter of law.  *See Mickalis Pawn Shop*, 645 F.3d at 137.

In evaluating those allegations, the Court considers "documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).

The "district court need not agree that the alleged facts constitute a valid cause of action." *Mickalis Pawn Shop*, 645 F.3d at 137 (citation omitted); *see Spin Master Ltd. v. 158*, 463 F. Supp. 3d 348, 367 (S.D.N.Y. 2020) ("The essence of Fed. R. Civ. P. 55 is that a plaintiff can obtain from a default judgment relief equivalent to but not greater than it would obtain in a contested proceeding assuming it prevailed on all of its factual allegations."). Rather, the Court is "required to determine whether the [plaintiff's] allegations establish the [defendant's] liability as a matter of law." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). The legal sufficiency of a non-defaulting party's claims "is analyzed under the familiar plausibility standard enunciated in [*Bell Atlantic Corp. v. Twombly*] and [*Ashcroft v. Iqbal*], aided by the additional step of drawing inferences in the movant's favor." *WowWee Grp. Ltd. v. Meirly*, 2019 WL 1375470, at *5 (S.D.N.Y. Mar. 27, 2019).

A default judgment entered on well-pleaded allegations does not reach the issue of damages, and a plaintiff "must therefore substantiate [her] claim for damages with evidence to prove the extent of those damages." *Hood v. Ascent Med. Corp.*, 2016 WL 1366920, at *15 (S.D.N.Y. Mar. 3, 2016), *report and recommendation adopted*, 2016 WL 3453656 (S.D.N.Y. June 20, 2016), *aff'd,* 691 F. App'x 8 (2d Cir. 2017). To determine the amount of damages that should be awarded on a default judgment, Federal Rule of Civil Procedure 55(b)(2) "leaves the decision of whether a hearing is necessary to the discretion of the district court." *Lenard v. Design Studio*, 889 F. Supp. 2d 518, 527 (S.D.N.Y. 2012). And "[w]here, on a damages inquest, the plaintiff makes a damages submission and the defaulting defendant makes no submission in

opposition and does not request a hearing, the court may determine the adequacy of the plaintiff's damages claim based on its submitted proofs." *Id.*

## DISCUSSION

Plaintiff seeks statutory damages for Defendant's infringing use of Plaintiff's photograph, urging that Defendant's default warrants heightened statutory damages for willfulness. Plaintiff likewise argues for the award of attorneys' fees and costs, as well as for a permanent injunction barring Defendant's future infringing use of the Photograph.

**I.    Jurisdiction**

The Court begins by assuring itself of its jurisdiction. *See Select Harvest USA LLC v. Indian Overseas Bank*, 2023 WL 2664079, at *7 (S.D.N.Y. Mar. 28, 2023); *Mockingbird 38, LLC v. Int'l Bus. Times, Inc.*, 2022 WL 154137, at *3 (S.D.N.Y. Jan. 18, 2022). Plaintiff's claim arises under the Copyright Act, 17 U.S.C. § 101 *et seq.*, such that the Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331. The Court also has personal jurisdiction over the Defendant as "a business corporation incorporated under the laws of the State of New York, with its principal place of business in New York." *Trustees of N.Y.C. Dist. Council of Carpenters Pension Fund v. Bldg. Maint. Corp.*, 2020 WL 1529455, at *1 (S.D.N.Y. Mar. 31, 2020).

**II.    Liability**

To prevail on a copyright infringement claim, a plaintiff must demonstrate: "(i) ownership of a valid copyright; and (ii) unauthorized copying of the copyrighted work." *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 51 (2d Cir. 2003) (citing *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)).

A certificate of registration from the United States Register of Copyrights constitutes *prima facie* evidence of the valid ownership of a copyright. *Id.*; *see* 17 U.S.C. §

410(c).  Plaintiff has submitted such registration certificates for the Photograph and has thus met this first element.  *See* Dkt. No. 18-2.

To satisfy the second element, a plaintiff must demonstrate that: "(1) the defendant has actually copied the plaintiff's work; and (2) the copying is illegal because a substantial similarity exists between the defendant's work and the protectible elements of plaintiff's [work]."  *Yurman Design, Inc. v. PAJ Inc.*, 262 F.3d 101, 110 (2d Cir. 2001).  Actual copying may be shown by direct evidence or indirect evidence; "[i]f the two works are so strikingly similar as to preclude the possibility of independent creation, copying may be proved without a showing of access."  *Lipton v. Nature Co.*, 71 F.3d 464, 471 (2d Cir. 1995) (internal quotation marks and citation omitted).  Substantial similarity, in turn, hinges on "whether an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work."  *Hamil America, Inc. v. GFI*, 193 F.3d 92, 100 (2d Cir. 1999).

Plaintiff satisfies the second element.  His complaint provides an image of the Photograph, Dkt. No. 1-1, and a screenshot of the image on Defendant's website, Dkt. No. 1-2.  "The images are identical."  *Mockingbird 38*, 2022 WL 154137, at *3; *see Verch v. Blockchain Techs. Corp.*, 2021 WL 1198784, at *1 (S.D.N.Y. Mar. 30, 2021) (same).

Thus, the Court grants default judgment in Plaintiff's favor on his copyright infringement claim against the Defendant.

## III.    Statutory Damages

Plaintiff seeks statutory damages totaling $3,650.00 against Defendant for willful copyright infringement.  Compl. ¶ 56; Dkt. No. 21 ¶ 3.  Under the Copyright Act, the copyright owner can elect between two different types of damages upon a showing of infringement: (1) actual damages and any additional profits of the infringer or (2) statutory damages.  17 U.S.C. § 504(a).  "To be entitled to statutory damages (as well as to recover attorneys' fees . . . ), a

copyright plaintiff must have timely registered their work with the United States Copyright Office." *Chosen Figure LLC v. Prabal Gurung, LLC*, 2025 WL 1042337, at *7 (S.D.N.Y. Jan. 27, 2025) ("*Chosen Figure R&R*"), *report and recommendation adopted in relevant part*, 2025 WL 752054 (S.D.N.Y. Mar. 10, 2025) ("*Chosen Figure Opinion*").[1]  Where "the copyright owner published their work prior to infringement, they must register the work either before infringement or 'within three months after the first publication.'"  *Sadowski v. Tribuna Abierta, Inc.*, 2024 WL 2279166, at *3 (S.D.N.Y. Apr. 16, 2024) (quoting 17 U.S.C. § 412).

The Copyright Act sets ranges for the amount of statutory damages depending upon whether the infringement was willful, knowing, or innocent.  In the event of a willful infringement, the court may impose statutory damages up to $150,000 for each work infringed. 17 U.S.C. § 504(c)(2).  The court may impose an award of statutory damages of not less than $750 or more than $30,000 for each work infringed for a knowing infringement.  17 U.S.C. § 504(c)(1).  And if the infringer proves and the court finds that the infringer was not aware and had no reason to believe that his or her acts constituted an infringement of copyright, the court in its discretion may reduce the award of statutory damages to a sum of not less than $200.  17 U.S.C. § 504(c)(2).  Thus, "there are three levels of awards: a basic award, an increased measure, and a decreased measure."  5 Nimmer on Copyright § 14.04[B][1][a] (2025).  "[W]illfulness warrants the increase, innocence the decrease, and all other cases are computed according to the standard measure."  *Id*.  "District courts 'enjoy wide discretion . . . in setting the amount of

---

[1] A copyright owner is entitled to statutory damages except as provided by Section 412 of the Copyright Act which provides: "no award of statutory damages or of attorney's fees . . . shall be made for . . . any infringement of copyright commenced after first publication of the work and before the effective date of registration, unless such registration is made within three months after the first publication of the work."  17 U.S.C. § 412; *see* 2 Nimmer on Copyright § 7.16[C][1][a]–[b] (2025).

statutory damages.'" *Bryant v. Media Right Prods., Inc.*, 603 F.3d 135, 143 (2d Cir. 2010)

(quoting *Fitzgerald Pbl'g Co v, Baylor Pub. Co.,* 807 F.2d 1110, 1116 (2d Cir. 1986)).

 The Second Circuit has stated that "[w]hen determining the amount of statutory damages

to award for copyright infringement, courts consider : (1) the infringer's state of mind; (2) the

expenses saved, and profits earned, by the infringer; (3) the revenue lost by the copyright holder;

(4) the deterrent effect on the infringer and third parties; (5) the infringer's cooperation in

providing evidence concerning the value of the infringing material; and (6) the conduct and

attitude of the parties." *Bryant*, 603 F.3d at 144; *see also Castillo v. G&M Realty L.P.*, 950 F.3d

155, 171 (2d Cir. 2020), as amended (Feb. 21, 2020) (considering same factors under Visual

Artists Rights Act of 1990).[2]

 "In cases involving willful infringement of photographs courts in this Circuit typically

award a multiple of three to five times the amount of the licensing fee the plaintiff would expect

to receive had the defendant properly licensed the photograph." *Chosen Figure R&R*, 2025 WL

1042337, at *7 (quoting *Sadowski v. Tribuna Abierta*, 2024 WL 2279166, at *4 (collecting

cases)).

 Plaintiff has established his entitlement to statutory damages.  Plaintiff first published the

Photograph on December 13, 2019.  Compl. ¶ 14; Dkt. No. 1-1. Plaintiff registered the copyright

on January 11, 2020.  Compl. ¶ 14; Dkt. No. 18-2.  Defendant infringed Plaintiff's copyright by

---

[2] Even after *Bryant*, some courts in this Circuit have continued to frame the analysis as a seven-factor test, which overlaps in substance with the *Bryant* test.  *See, e.g., McGraw Hill LLC v. Doe 1*, 2022 WL 2979721, at *4 (S.D.N.Y. July 26, 2022) (describing the seven factors as "(1) 'the expenses saved and the profits reaped,' (2) 'the revenues lost by the plaintiff,' (3) 'the value of the copyright,' (4) 'the deterrent effect on others besides the defendant,' (5) 'whether the defendant's conduct was innocent or willful,' (6) 'whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced,' and (7) 'the potential for discouraging the defendant.'" (quoting *Manno v. Tenn. Prod. Ctr., Inc.*, 657 F. Supp. 2d 425, 433 (S.D.N.Y. 2009))).

displaying the Photograph on the Website as part of an online story on or about March 10, 2020. Dkt. No. 1-2. The act of infringement occurred after registration. Plaintiff is therefore entitled to seek statutory damages. *See Chosen Figure R&R*, 2025 WL 1042337, at *7.

Turning to the amount of statutory damages, the Court first examines the revenue lost by the Plaintiff as the copyright holder. Courts frequently use the work's licensing fee to measure the revenue lost, which then serves as a baseline against which to apply the relevant *Bryant* factors. *See Martinka v. RentOwnSell LLC*, 2025 WL 2177258, at *5 (S.D.N.Y. July 31, 2025). Plaintiff has withheld information regarding the actual fee he received when he licensed the Photograph to the New York Post, which counts against Plaintiff. *Id.* However, he has submitted evidence of a Getty Image license estimate for a photograph that is strikingly similar to his Photograph. *See* Dkt. No 18-4. The estimate for that photograph is $730.00. *Id.* "Screenshots from the Getty Images price calculator may in some circumstances provide evidence for the fair market value for the licensing fee of a photograph" when they are "a reasonable proxy for the value a license for the Photograph would receive on the market." *Proimos v. Madison Prop. Grp.*, 2021 WL 4391238, at *2 (S.D.N.Y. Sept. 24, 2021) (assessing actual damages); *see also Juliff v. Headout, Inc.,* 2021 WL 3887764, at *2 (S.D.N.Y. Aug. 31, 2021).[3] The Court thus is prepared to use the $730 figure as a baseline.

Plaintiff's submission with respect to the remaining factors relevant to statutory damages is conspicuous for its evidentiary gaps. "In the default context, it is obviously incumbent upon the plaintiff to submit a record sufficient to support the amount of statutory damages that he is

---

[3] Plaintiff avers that, had Defendant asked for a license for the Photograph, he would not have charged any less than the Getty Images estimate. Dkt. No. 18 ¶ 26. However, "'[t]he question is not what the owner would have charged, but rather what is the fair market value.'" *Proimos*, 2021 WL 4391238, at *2 (quoting *On Davis v. The Gap, Inc.*, 246 F.3d 152, 166 (2d Cir. 2001)).

seeking." *Seelie v. Original Media Grp. LLC*, 2020 WL 136659, at *2 (E.D.N.Y. Jan. 13, 2020).

While some "allowance must be made for the fact that the defendant's failure to appear limits

that which plaintiff can show," that does not excuse Plaintiff from reviewing publicly available

information and "conducting some minimal investigation of the infringement and then arguing

the facts of this case to support his award requests." *Id.* Plaintiff has submitted no evidence of

the extent of profits reaped by Defendant through the publishing the Photograph on their website.

Plaintiff also has offered little evidence with respect to willfulness. Infringement is

willful when "the defendant was actually aware of the infringing activity, or . . . the defendant's

actions were the result of 'reckless disregard' for, or 'willful blindness' to, the copyright holder's

rights." *Island Software & Comput. Servs., Inc. v. Microsoft Corp.*, 413 F.3d 257, 263 (2d Cir.

2005). The defendant's knowledge "need not be proven directly but may be inferred from the

defendant's conduct." *N.A.S. Import, Corp. v. Chenson Enters.*, 968 F.2d 250, 252 (2d Cir.

1992). Courts will consider various factors when determining willfulness, including "whether

the infringer was on notice that the copyrighted work was protected; whether the infringer had

received warnings of the infringements; [and] whether the infringer had experience with previous

copyright ownership, prior lawsuits regarding similar practices, or work in an industry where

copyright is prevalent." *Agence Fr. Presse v. Morel*, 934 F. Supp. 2d 547, 570 (S.D.N.Y. 2013)

(Nathan, J.) (internal citations omitted).

Plaintiff has presented no evidence regarding whether the infringer had experience with

previous copyright ownership or was involved in prior lawsuits regarding similar practices.

Although he alleges that Defendant is a media company which owns and operates a website,

Compl. ¶ 3, he offers no affirmative evidence regarding Defendant's business and the extent to

which copyright is prevalent in that business. He also alleges that his counsel served Defendant

with "a letter seeking to address" this dispute on March 10, 2023, prior to initiating this action, *Id.* ¶ 45, and states that Defendant has continued to infringe Plaintiff's copyright, but he submits no evidence to support either assertion. *See Chosen Figure R&R*, 2025 WL 1042337, at *10 (declining to consider letter allegedly sent from counsel to defendant notifying defendant of copyright infringement where plaintiff submitted no evidence of such letter); *Lucerne Textiles, Inc. v. H.C.T. Textiles Co.*, 2013 WL 174226, at *3 (S.D.N.Y. Jan. 17, 2013) (considering the cease and desist letters in discussion of statutory damages where plaintiff provided copies of the cease and desist letters, the drafting of the letters was included in attorney billing, and the letters were mentioned in several affidavits), *report and recommendation adopted*, 2013 WL 1234911 (S.D.N.Y. Mar. 26, 2013).[4] Plaintiff also offers no evidence establishing the presence of a copyright disclaimer on or near the Photograph. *See Michael Grecco Prods., Inc. v. New York Performing Arts Acad., Inc.*, 2025 WL 370831, at *4 (S.D.N.Y. Feb. 2, 2025) ("The inclusion of such disclaimer indicates that Defendant understands the importance of copyright protection and that it actually owns the content (including photographs) published on its website."); *Reilly v. Com.*, 2016 WL 6837895, at *9 (S.D.N.Y. Oct. 31, 2016) (finding willfulness where plaintiff provided evidence that the defendant "accessed the Photograph . . . copied it, cropped it so as to remove the watermark or notice, and then displayed it on the Charged.fm Website in multiple locations").

---

[4] Notably, Plaintiff does not include the fact of the letter in his declaration to the Court. *See* Dkt. No. 18 ¶ 16 ("I commenced this action upon my discovery of the Infringement and determination that Defendant had not obtained a license or other permission from me to display the Photograph in any publication or on any platform."). The assertion does not appear to be supported by the attorney time records, which include no reference to a letter. *See* Dkt. No. 19 at 3–4 (listing attorney time entries, including one entry for March 1, 2023, for eighteen minutes spent "[r]eview[ing] [] new copyright referral," without any mention of contacting Defendant, and an entry for March 8, 2024, for forty-eight minutes spent "draft[ing] copyright complaint" just two days prior to the date on which counsel allegedly sent Defendant the notification letter).

Plaintiff relies for the most part on the fact that Defendant has defaulted.  But the fact of Defendant's default on its own supplies but weak support for willfulness.  *See Spin Master*, 463 F. Supp. 3d at 374 ("If a defendant has the right to default, with the only consequence being that it has lost the ability to defend itself against the well-pleaded allegations of a complaint, it should follow that the mere fact of a default should not increase the quantum of statutory damages." (citation omitted)); *Chosen Figure R&R*, 2025 WL 1042337, at *9; *Chosen Figure Opinion*, 2025 WL 752054, at *3 ("Chosen Figure cannot establish willfulness by relying solely on its allegation that it notified Prabal Gurung prior to filing suit and the mere fact of default."); *Kelly Toys Holdings, LLC v. Airpods Pro Store*, 2022 WL 2801077 at *7 (S.D.N.Y. July 18, 2022).[5] Almost all of Plaintiff's allegations of willfulness are conclusory and made on "information and belief," *see, e.g.*, Compl. ¶¶ 34, 55, or are premised exclusively on Defendant's default, *see, e.g.*, Pl. Br. at 7–8.

The fourth factor looks to the deterrent effect of any damages award on the defendant or other parties.  Statutory damages perform an important function in ensuring that would-be infringers are deterred.  The need for deterrence may be particularly high where the defendant is a serial copyright infringer, or where there are multiple actors involved in the infringement.  *See Cawthon v. Zhousunyijie*, 2024 WL 1156073, at *8 (S.D.N.Y. Mar. 18, 2024); *McGraw Hill*, 2022 WL 2979721, at *5.  Here, Plaintiff has not presented any evidence that the Defendant is

---

[5] In cases where courts have considered defendant's default as a factor supporting willfulness, the failure to answer has often been accompanied by some other evidence of willfulness. *See, e.g.*, *Stokes v. MilkChocolateNYC LLC*, 681 F. Supp. 3d 226, 240 (S.D.N.Y. 2023) (finding defendant's conduct willful "not only by its default, but also by removal of Stokes' watermark and logo from the Photograph and by continuing infringement even after service of the lawsuit"); *Kelly Toys Holdings, LLC v. alialialiLL Store*, 606 F. Supp. 3d 32, 51 (S.D.N.Y. 2022) ("Even putting the fact of default aside, the conduct set forth in the Complaint and supporting evidence demonstrate that the Defaulting Defendants engaged in willful counterfeiting.").

a serial copyright infringer, or that there were multiple actors present in the course of the infringement. Accordingly, this factor favors a smaller award.

Finally, the fifth factor, defendant's cooperation in providing evidence of the value of the infringing products, does not apply in the case of default judgment. *See Hirsch v. Sell It Soc., LLC*, 2020 WL 5898816, at *4 (S.D.N.Y. Oct. 5, 2020). "The Court does not view [Defendant's default] as probative." *Verch*, 2021 WL 1198784, at *2. Absent evidence that Defendant "engaged in an effort to conceal the fact or scale of its wrongdoing or to mislead the plaintiff or the court about the existence or scale of [the infringement]," *Spin Master*, 463 F. Supp. 3d at 374, this factor is neutral.

"In considering a single use copyright infringement case such as this one, courts in this Circuit have typically awarded statutory damages in an amount between $1,000 and $5,000." *Verch*, 2021 WL 1198784, at *2 (collecting cases); *see Tabak v. Lifedaily, LLC*, 2021 WL 5235203, at *5 (S.D.N.Y. Nov. 9, 2021).

In light of the Court's consideration of these factors and the statutory damages calculations of other courts in this Circuit, the Court concludes that Plaintiff is entitled to a statutory damages award of $1,500.00 for the Photograph. *See Serio v. Skijor, USA, Inc.*, 2023 WL 8372894, at *5 (S.D.N.Y. Dec. 4, 2023) (awarding $1,000 in damages where plaintiff provided no evidence in support of deterrence, willfulness, and the licensing fee); *Green v. Akonik Label Grp. LLC*, 2022 WL 2817311, at *4 (S.D.N.Y. July 19, 2022) (similar).

## IV.    Attorneys' Fees

In addition to statutory damages, Plaintiff requests an award of reasonable attorneys' fees and costs pursuant to 17 U.S.C. §§ 505, 512(f). Compl. ¶ 57. Plaintiff specifically requests $2,280.00 in attorneys' fees plus $460.00 in costs. Dkt. No. 21 at 12.

14

The Copyright Act authorizes a district court to award "full costs," including reasonable attorneys' fees, to a prevailing party in an infringement action.  17 U.S.C. § 505.  "[A]ttorney's fees are to be awarded to prevailing parties only as a matter of the court's discretion." *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994).[6]  When deciding whether to exercise its discretion under Section 505, a district court "may consider such factors as (1) the frivolousness of the non-prevailing party's claims or defenses; (2) the party's motivation; (3) whether the claims or defenses were objectively unreasonable; and (4) compensation and deterrence." *Bryant*, 603 F.3d at 144; *see Fogerty*, 510 U.S. at 534 n.19.  "The third factor—objective unreasonableness—should be given substantial weight." *Bryant*, 603 F.3d at 144 (citing *Matthew Bender & Co. v. West Publ'g Co.*, 240 F.3d 116, 122 (2d Cir.2001)).  Even where the evidence does not establish willful infringement, the court may award attorneys' fees if any defense to the claim of infringement would be objectively unreasonable.  *See Chosen Figure Opinion*, 2025 WL 752054, at *5.

Plaintiff is entitled to an award of attorneys' fees.  Plaintiff is the prevailing party.  "Given that [Defendant] has failed to respond to [Plaintiff's] complaint, there are no defenses or claims for the Court to assess—leaving only compensation and deterrence as factors for the

---

[6] Plaintiff maintains that "although discretionary, awarding attorney's fees is the rule rather than the exception and should be awarded routinely."  Pl. Br. at 14.  Neither case cited—*Diamond v. Am–Law Publishing Corp.*, 745 F.2d 142 (2d Cir. 1984) and *Roth v. Pritikin*, 787 F.2d 54 (2d Cir. 1986)—support this proposition.  In fact, in *Fogerty*, the Supreme Court rejected this very proposition.  510 U.S. at 534 ("[W]e reject both the 'dual standard' adopted by several of the Courts of Appeals and petitioner's claim that § 505 enacted the British Rule for automatic recovery of attorney's fees by the prevailing party.  Prevailing plaintiffs and prevailing defendants are to be treated alike, but attorney's fees are to be awarded to prevailing parties only as a matter of the court's discretion.").  While some circuits continue to practice default fee-shifting, *see, e.g.*, *Alameda Films SA de CV v. Authors Rts. Restoration Corp. Inc.*, 331 F.3d 472, 483 (5th Cir. 2003), the Second Circuit does not and instead considers the factors suggested by *Fogerty*.  *See, e.g., Matthew Bender*, 240 F.3d at 121–22 (citing *Fogerty*, 510 U.S. at 534 n.19).

Court to consider." *Stokes v. MilkChocolateNYC LLC*, 681 F. Supp. 3d 226, 243 (S.D.N.Y. 2023) (citation omitted). The Infringement is an exact duplicate of the Photograph, supplying some evidence of willfulness. *Compare* Dkt. No. 1-2 *with* Dkt. No. 1-1. "Particularly in cases of default and willful infringement, courts have found it appropriate to award attorney's fees both for purposes of compensation and deterrence." *Stokes*, 681 F. Supp. 3d at 243–44; *see Hollander Glass Texas, Inc. v. Rosen-Paramount Glass Co.*, 291 F. Supp.3d 554, 560 (S.D.N.Y. 2018) (granting attorney's fees and costs where defendant defaulted in copyright infringement case); *Myeress v. Elite Travel Group USA*, 2018 WL 5961424, at *4 (S.D.N.Y. Nov. 14, 2018) (same). Awarding attorneys' fees to Plaintiff will serve the goals of both compensation and deterrence by compensating Plaintiff for the cost of defending his copyright and deterring Defendant and similar companies from infringing copyrights in the future.

As a general matter, the "starting point" in analyzing whether claimed attorneys' fees are appropriate is "the lodestar—the product of a reasonable hourly rate and the reasonable number of hours required by the case." *Milea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011); *see generally Lilly v. City of New York*, 934 F.3d 222, 227–34 (2d Cir. 2019) (discussing calculation of reasonable hourly rates and reasonable number of hours expended). The party seeking fees bears the burden of demonstrating that its requested hours and hourly rates are reasonable and must provide a court with sufficient information to assess the fee application. *See Allende v. Unitech Design, Inc.*, 783 F. Supp. 2d 509, 512–13 (S.D.N.Y. 2011). A court's focus is "on setting a reasonable hourly rate, taking account of all case-specific variables." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany & Albany Cty. Bd. of Elections*, 522 F.3d 182, 189 (2d Cir. 2008). The reasonable hourly rate is "the rate a paying client would be willing to pay," bearing in mind "that a reasonable, paying client wishes

to spend the minimum necessary to litigate the case effectively." *Id.* at 190. When an attorney's requested hourly rate is higher than rates found to be reasonable in the relevant market, the court may reduce the requested rate. *See Savino v. Comput. Credit, Inc.*, 164 F.3d 81, 87 (2d Cir. 1998). Once a court has determined the appropriate hourly rate, it must also examine whether the number of hours billed was reasonable. The court "should exclude excessive, redundant or otherwise unnecessary hours[.]" *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999).

Plaintiff seeks compensation for the time of Craig B. Sanders, a partner at the firm Barshay Sanders PLLC, of 1.2 hours at a rate of $750 per hour; of Joshua Vera, an associate of three years' experience, of 3.9 hours at a rate of $250 per hour; and of Ryan Feldman, Julie Busch, and Laura Costigan, paralegals, of 2.7 hours at a rate of $150 per hour; totaling $2,280.00 billed. Dkt. No. 19.

Some courts in this Circuit have found such rates to be within but at the high end of a reasonable range of rates for partners and associates. *See Capitol Records, Inc. v. MP3Tunes, LLC*, 2015 WL 7271565, at *4 (S.D.N.Y. Nov. 12, 2015). However, this Court agrees with other courts in this District that have considered similar rates for Mr. Sanders at Barshay Sanders PLLC in context of the firm's size and location and found them to be in excess of a reasonable partner rate for copyright cases. *See Seidman v. Yid Info. Inc.*, 2024 WL 4664669, at *8 (E.D.N.Y. June 11, 2024) ("Mr. Sanders'[s] requested hourly rate of $750 is nearly double the rate that courts have approved for partners in this district. The Court instead finds $450 per hour is a reasonable rate for Mr. Sanders"); *Mockingbird 38*, 2022 WL 154137, at *7 (finding a rate of $700 per hour for Sanders to be unreasonably high, and instead granting a rate of $500 per hour); *FameFlyNet, Inc. v. Shoshanna Collection, LLC*, 2018 WL 671267, at *2–3 (S.D.N.Y. Feb. 1, 2018) (granting reasonable attorneys' fees for Sanders at a rate of $400 an hour and $265 an hour

for two associates); *Barcroft Media, Ltd. v. Fashion In Me Inc.,* 2018 WL 4565889, at \*5–7 (S.D.N.Y. June 5, 2018) (granting reasonable attorneys' fees for Sanders at a rate of $500 an hour and $300 an hour for an associate), *report and recommendation adopted,* 2018 WL 4568727 (S.D.N.Y. July 25, 2018).

A reasonable rate in 2018 or 2022 is not necessarily the appropriate rate for work performed in 2024 and 2025. *Cf. Farbotko v. Clinton Cty. Of New York*, 433 F.3d 204, 209 (2d Cir. 2005) ("Recycling rates awarded in prior cases without considering whether they continue to prevail may create disparity between compensation available under [the fee-shifting statute] and compensation in the marketplace"). "Unthinking application of fee rates simply because they were approved in the past also runs the risk of freezing fee awards in place." *M.H. v. New York City Dept. of Educ.*, 2021 WL 4804031, at \*12 (S.D.N.Y. Oct. 13, 2021).

This Court finds a rate of $525 an hour to be reasonable for Mr. Sanders, $275 an hour to be reasonable for Mr. Vera, and $100 per hour to be reasonable for each paralegal. *See, e.g.*, *Harbus v. Vosa TV Inc.*, 2025 WL 1153818, at \*16 (E.D.N.Y. Apr. 21, 2025) (finding a rate of $450 per hour for Sanders, $200 per hour for Vera, and $75 per hour for Busch, Feldman, and Costigan to be reasonable); *Montanes v. Avanti Pizza 2 Inc.*, 2022 WL 17820103, at \*8 (E.D.N.Y. Oct. 20, 2022)) (collecting cases for the proposition that in default judgment cases, paralegals are typically awarded a $75 hourly rate); *Tetra Images, LLC v. Grahall Partners, LLC*, 2021 WL 2809566, at \*4 (S.D.N.Y. July 6, 2021) (finding rates of $475 per hour for a managing partner, $450 per hour for a partner, and $200 per hour for a summer associate to be reasonable); *Haker v. Tentree Int'l Inc.*, 2021 WL 3884195, at \*6 (E.D.N.Y. Aug. 31, 2021) (finding reasonable rates of $200 to $325 for senior associates, and $100 to $200 for junior associates); *Latin Am. Music Co., Inc. v. Spanish Broad. Sys., Inc.*, 2020 WL 2848232, at \*6–7

(S.D.N.Y. June 1, 2020) (noting that courts in this district have found rates of $400 to $750 an hour for partners and $200 to $450 for associates to be reasonable in copyright cases); *Bass v. Diversity Inc. Media*, 2020 WL 2765093, at *6 (S.D.N.Y. May 28, 2020) ("A review of cases in this District and in the Eastern District of New York suggests that courts have approved associate rates of $350 and up to $500 for partners in copyright cases."); *Sara Designs, Inc. v. A Classic Time Watch Co. Inc.*, 2018 WL 2976009, at *4 (S.D.N.Y. June 13, 2018) (finding hourly rates of $275 an hour for a junior associate, $325 an hour for a senior associate and $450 an hour for a senior partner to be reasonable).[7]

The number of hours billed by each of Mr. Sanders, Mr. Vera, and the three paralegals appear to be reasonable, and, as to Mr. Sanders, appropriately non-administrative in nature. Accordingly, the Court grants reasonable attorneys' fees calculated as follows:

| Timekeeper | Requested Rates | Approved Rates | Hours | Fees |
|---|---|---|---|---|
| Craig Sanders | $750 | $525 | 1.2 | $630.00 |
| Joshua Vera | $250 | $275 | 3.9 | $1,072.50 |
| Paralegals | $150 | $100 | 2.7 | $270.00 |
| Total Fees: | | | | $1,972.50 |

---

[7] The rates are consistent with those set forth in the survey prepared by the American Intellectual Property Law Association submitted by Plaintiff, given the lack of complexity of this matter. Dkt. No. 19-5; *see Moses v. Gundo Designs Inc*., 2025 WL 2217130, at *3, *3 n.5 (E.D.N.Y. Aug. 5, 2025) (considering the results of the AIPLA survey but according them little weight as based on a small sample size and aggregating across IP specialties of varying complexity); *Fedorova v. DML News & Ent., Inc.*, 2024 WL 5119108, at *7 (E.D.N.Y. Oct. 10, 2024) (similar); *Video-Cinema Films, Inc. v. Cable News Network, Inc.*, 2004 WL 213032, at *1 (S.D.N.Y. 2004) (noting that it is appropriate to consult the AIPLA survey). Plaintiff also relies on the Laffey Matrix which has been used to capture the prevailing rates for complex federal litigation in Washington, D.C., to support his claim to a higher hourly rate. Dkt. No. 19 ¶ 17. However, the Laffey Matrix generally is not used to determine the rates of lawyers practicing copyright law in New York City. *Cf. N.G.B. v. New York City Dept. of Educ.*, 2023 WL 2711753, at *11 (S.D.N.Y. Mar. 30, 2023) (disapproving use of Laffey Matrix for IDEA litigation).

Finally, when a party is awarded attorney's fees, it is also entitled to compensation for "those reasonable out-of-pocket expenses incurred by attorney and ordinarily charged to then clients." *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998) (quotations omitted). Plaintiff seeks to recover costs of $405 for the filing fee, and $55 for service of process. The filing fee is noted on the docket, Dkt. No. 1, and Plaintiff provides an invoice from the process server employed in this case, in the amount of $55.00. Dkt. No. 19-3. Accordingly, the costs submitted, totaling $460, are reasonable.

## V.    Injunctive Relief

Plaintiff requests that Defendant be permanently enjoined from displaying the Photograph on its Website or any alternative medium under its control. *See* Compl. ¶ 58; Pl. Br. at 17–18.[8]

When a plaintiff has succeeded on the merits, as Plaintiff has here on the default judgment, the Court may enter a permanent injunction to prevent further violations of copyright

---

[8] It is not entirely clear whether Plaintiff is also seeking to enjoin Defendant from infringing on any of Plaintiff's copyrighted works. The complaint at once states that "Plaintiff is entitled to injunctive relief to prevent or restrain infringement of his copyright pursuant to 17 U.S.C. § 502," Compl. ¶ 58, and that Plaintiff asks "for an order pursuant to 17 U.S.C. § 502(a) enjoining Defendant from *any* infringing use of *any* of Plaintiff's works," Compl. at 7 (emphasis added). Plaintiff limits his argument for a permanent injunction in his brief to the Photograph. *See* Pl. Br. at 17–18. Nevertheless, a broad injunction seeking to enjoin Defendant from infringing on any of Plaintiff's copyrighted work would be "far too broad." *Spin Master*, 463 F. Supp. 3d at 377. Such an injunction would not be "narrowly tailored," *Omega SA v. 375 Canal, LLC*, 984 F.3d 244, 259 (2d Cir. 2021) (quoting *Guthrie Healthcare System v. ContextMedia, Inc.*, 826 F.3d 27, 46 (2d Cir. 2016)), as it would "exceed[ ] the . . . infringement upon [Plaintiff's] rights," *Starter Corp. v. Converse, Inc.*, 170 F.3d 286, 300 (2d Cir. 1999), and "prohibit generally all unlawful activity," *Sterling Drug, Inc. v. Bayer AG*, 14 F.3d 733, 749 (2d Cir. 1994). Thus, the Court will limit its discussion of a permanent injunction exclusively as to the Photograph. *See also Serio v*, 2023 WL 8372894, at *6 (issuing an injunction proscribing future infringement exclusively as to the copyrighted material at issue rather than *any* of Plaintiff's copyrighted material); *Beastie Boys v. Monster Energy Co.*, 87 F. Supp. 3d 672, 681 (S.D.N.Y. Feb. 20, 2015) (similar).

if plaintiff has demonstrated: "(1) that it suffered an irreparable injury; (2) that remedies available at law are inadequate to compensate for that injury; (3) that the balance of hardships between the parties warrants a remedy in equity for the plaintiff; and (4) that the public interest would not be disserved." *Salinger v. Colting*, 607 F.3d 68, 79-80 (2d Cir. 2010); *see* 17 U.S.C. § 502(a).  Plaintiff meets all four requirements for injunctive relief.

First, Defendant's failure to appear creates an inference that there exists a threat of continuing violation and establishes irreparable harm.  *See, e.g.*, *Stokes*, 681 F. Supp. 3d at 242; *Ideavillage Prods. Corp. v. Bling Boutique Store*, 2018 WL 3559085, at *5 (S.D.N.Y. July 24, 2018) ("Defaulting Defendants' refusal to defend this action creates a threat that they will continue to infringe . . . unless permanently enjoined from doing so[.]").

Second, purely monetary relief would not sufficiently compensate for Plaintiff's injury, as the Court may infer from Defendant's default that it is willing to continue its infringement.  *See Stokes*, 681 F. Supp. 3d at 226 ("'Defendant's continuing infringement' also 'establishes the second required element because a plaintiff has no adequate remedy at law where, absent an injunction, the defendant is likely to continue infringing its copyright.'" (quoting *Sadowski v. Yeshiva World News, LLC*, 2023 WL 2707096, at *8 (E.D.N.Y. Mar. 16, 2023), *report and recommendation adopted*, 2023 WL 2742157 (E.D.N.Y. Mar. 31, 2023)); *Pearson Educ., Inc. v. Vergara*, 2010 WL 3744033, at *4 (S.D.N.Y. Sept. 27, 2010) ("A court may infer from a defendant's default that it is willing to, or may continue its infringement.").

Third, the balance of hardships favors Plaintiff as Defendant will not suffer any legally cognizable hardship from an injunction barring it from using the Photograph without a license.  *See O'Neill v. Flawless Kitty LLC*, 2024 WL 1542915, at *7 (S.D.N.Y. Apr. 10, 2024) (finding balance of hardships favored plaintiff because defendant "will not suffer any legally

cognizable hardship from an injunction barring it from using a copyrighted photograph without permission"); *see also WPIX, Inc. v. ivi, Inc.*, 691 F.3d 275, 287 (2d Cir. 2012) ("It is axiomatic that an infringer . . . cannot complain about the loss of ability to offer its infringing product.") (citation omitted) (in context of preliminary injunction).

Fourth, the public interest is served by a permanent injunction, as the "public has a compelling interest in protecting copyright owners' marketable rights to their work so as to encourage the production of creative work." *Cawthon*, 2024 WL 1156073, at *11 (quoting *Sadowski v. Yeshiva World*, 2023 WL 2707096, at *8)

Accordingly, the Court grants Plaintiff's request for a permanent injunction prohibiting Defendant from further infringement of the Photograph.

## CONCLUSION

The motion for default judgment is GRANTED IN PART and DENIED IN PART, and the motion for a permanent injunction is GRANTED.

Defendant is PERMANENTLY ENJOINED from continuing to display or use Plaintiff's Photograph (including any altered reproductions of the same image) on its Website or in any other manner unless and until Defendant receives a license or other express consent from Plaintiff or Plaintiff's assignee. Defendant (including any officer, employee, or agent) shall IMMEDIATELY CEASE all use of Plaintiff's photograph.

The Clerk of Court is respectfully directed to prepare a judgment against Hagedorn Communications, Inc. reflecting the Court's holding and setting forth damages as follows:

- The Court awards $1,500.00 in statutory damages for copyright infringement in violation of 17 U.S.C. § 501.

- The Court also awards attorneys' fees in the amount of $1,972.50 and costs in the amount of $460 pursuant to 17 U.S.C. § 505.

- The Court also awards post-judgment interest pursuant to 28 U.S.C. § 1961.

The Clerk of Court is respectfully directed to close Dkt. No. 17, enter judgment, and close the case.


       SO ORDERED.


Dated: September 15, 2025
      New York, New York       _____
                           LEWIS J. LIMAN
                   United States District Judge